**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**

**Lisa Marie Luttrell**                                                                 **Plaintiff**

**v.**                          **CASE NO. 3:13CV00125 JTR**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                 **Defendant**

## ORDER AFFIRMING THE COMMISSIONER

Lisa Marie Luttrell seeks judicial review of the denial of her application for disability insurance benefits (DIB). Luttrell last worked in 2009 as a certified nurse's assistant.[1] Luttrell applied for DIB on January 24, 2011, with an alleged onset date of May 1, 2010.[2] Luttrell's date last insured (DLI) is December 31, 2014.[3] Luttrell bases disability on syncope, chronic obstructive pulmonary disease (COPD), anxiety and severe depression.[4]

**The Commissioner's decision.** The Commissioner's ALJ determined that Luttrell has not engaged in substantial gainful activity since the alleged onset date.[5] Luttrell has severe impairments - syncope disorder, COPD, bilateral wrist dysfunction,

---

[1] SSA record at p. 116.

[2] *Id.* at p. 104.

[3] *Id.* at p. 113.

[4] *Id.* at p. 124.

[5] *Id.* at p. 10.

lumbar spine dysfunction, anxiety, depression and an affective mood disorder.[6] None of Luttrell's severe impairments meet the listings,[7] and Luttrell can perform sedentary work with the following non-exertional limitations: Luttrell is able to occasionally stoop, crouch, crawl, kneel, and climb ramps or stairs; she is unable to engage in balancing; and she is unable to climb ladders, ropes, or scaffolds; she must avoid all respiratory irritants, extreme heat, and extreme cold; she must avoid all driving; she can have no exposure to hazards such as unprotected heights, moving machinery, or open flames; she is able to perform work where interpersonal contact is incidental to the work performed, with "incidental" defined as: interpersonal contact requiring a limited degree of interaction such as meeting and greeting the public, answering simple questions, accepting payment and making change; she is capable of learning the complexity of tasks by demonstration or repetition within thirty days with few variables and little judgment; she requires supervision that is simple, direct and concrete.[8]

The ALJ held that Luttrell cannot perform any past relevant work,[9] but can

---

[6]*Id.* at p. 10.

[7]*Id.*

[8]*Id.* at p. 12.

[9]*Id.* at p. 16.

perform the positions of binder or mounter of small parts, positions identified by the vocational expert (VE) as available in the regional and national economies.[10] Luttrell's application was denied.[11]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[12] Luttrell filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[13]

**Luttrell's allegations.** Luttrell maintains that the decision of the ALJ is not supported by substantial evidence because (1) the ALJ erred in giving little weight to the opinion of Luttrell's treating physician; (2) the ALJ erred in giving little weight to a portion of the state consultative medical examiner's opinion; and (3) the ALJ

---

[10]*Id.* at p. 17.

[11]*Id.* at p. 18.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

erred in substituting his opinion for the opinion of physicians in determining Luttrell's residual functional capacity (RFC).

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[14] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the ALJ's denial of benefits.[15]

**Opinion of treating physician.** Luttrell maintains that the ALJ erred in giving little weight to the opinion of her treating physician. This argument is not persuasive. The ALJ's decision to assign little weight to the treating physician's opinion is supported by substantial evidence. Although the opinion of a treating physician is usually granted controlling weight, "an ALJ may grant less weight . . . when that opinion conflicts with other substantial medical evidence contained within the record."[16]

In a physical medical source statement, the treating physician opined that Luttrell is limited by the following restrictions:

- Lifting and carrying less than ten pounds on an occasional basis

---

[14]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[15]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[16]*Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000).

- Lifting and carrying less than ten pounds on a frequent basis

- Standing and walking three hours of an eight hour day

- Sitting for four hours of an eight hour day

- Needing the ability to change positions frequently, have frequent rest periods, have longer than normal breaks, and have the opportunity to shift at will from sitting or standing/walking

- No reaching

- Avoiding concentrated exposure to extreme cold, extreme heat and high humidity

- Avoiding all exposure to fumes, odors, dust and gas; perfumes; soldering fluxes; solvents/cleaners; and chemicals[17]

The treating physician determined that due to her impairments, Luttrell would be absent from work more than three days per month.[18] He based these findings on Luttrell's "multiple radiology exams."[19]

In a mental medical source statement, the treating physician opined that Luttrell's performance would be unreliable with respect to remembering locations and work procedures, arriving on time to work and completing a normal workday or

---

[17] SSA record at p. 353.

[18] *Id.*

[19] *Id.*

workweek without excessive absences, and dealing with work stress.[20] Further, Luttrell has no ability to perform at a pace and consistency required for production or assembly line.[21] As in the physical medical source statement, the treating physician determined that Luttrell's mental impairments would cause her to be absent from work more than three days a month.[22] This opinion was based on Luttrell's multiple office visits with the treating physician.[23]

The two medical source statements from Luttrell's treating physician render Luttrell unable to perform any work. The ALJ gave little weight to the opinion of the treating physician because the opinion was not supported by the record or by Luttrell's own admissions of her abilities and daily activities. Indeed, the treating physician's own notes do not support the extensive physical or mental restrictions placed on Luttrell. Luttrell's syncopal episodes began following the May 27, 2010, motor vehicle accident. In the first note, the treating physician states that Luttrell has had four syncopal episodes.[24] The following three notes each denote one to two syncopal

---

[20]*Id.* at p. 354.

[21]*Id.*

[22]*Id.*

[23]*Id.*

[24]*Id.* at p. 269.

episodes.[25] The July 21, 2010, note states that Luttrell suffered a syncopal episode that day, but at the time of the appointment was alert to "person, place and time."[26] Three of the notes fail to mention syncopal episodes,[27] and the October 11, 2011, note states that Luttrell has had no seizures.[28] Although most of the notes reference symptoms of pain, it appears that the pain is not severe. One note states, "pain doing well with meds."[29] The notes establish that Luttrell's pain level ranges between a one and four with the use of medication.[30] Issues of depression and anxiety are mentioned in a number of the treatment notes.[31] The July 21, 2010, note, however, refers Luttrell to counseling, and yet there are no records indicating that Luttrell sought such counseling.[32] The March 8, 2011, note indicates that there has been some improvement with Luttrell's depression and anxiety, and that her mood is "better."[33]

---

[25]*Id.* at pp. 266-68.

[26]*Id.* at p. 268.

[27]*Id.* at pp. 264, 320 & 383.

[28]*Id.* at p. 384.

[29]*Id.* at p. 385.

[30]*Id.* at pp. 265-66.

[31]*Id.* at pp. 264-65, 268, 270, 320, 382 & 384-85.

[32]*Id.* at p. 268.

[33]*Id.* at p. 320.

The radiology reports relied on by the treating physician do not support the limitations. The record contains five pertinent radiology reports.[34] On May 27, 2010, the day of Luttrell's motor vehicle accident, CT scans of Luttrell's lumbar spine, cervical spine and head were conducted.[35] The CT scans showed no acute fracture and minimal degenerative change in the lumbar spine, no acute fracture in the cervical spine and no acute intracranial hemorrhage in the head.[36] Two days later another CT scan was performed on Luttrell's head.[37] The scan showed no acute intracranial findings.[38] On June 9, 2010, imaging was done of Luttrell's carotid system, and no hemodynamically significant stenosis was identified.[39]

In August of 2010, an MRI of Luttrell's brain was conducted with the following impressions: 1) no acute intracranial hemorrhage or enhancing mass; 2) several 3 mm. focal increased T-2 and flare signal intensity at bilateral corona radiata which may represent tiny focal ischemic change versus other etiology, recommend to correlate

---

[34]*Id.* at pp. 188, 190, 201, 210 & 212.

[35]*Id.* at pp. 210 & 212.

[36]*Id.*

[37]*Id.* at p. 201.

[38]*Id.*

[39]*Id.* at p. 190.

clinically; and 3) minimal mucosal thickening in bilateral ethmoid sinuses with bilateral nasal turbinate hypertrophy.[40] Nothing of serious concern was noted from the MRI. Throughout the report, words like "minimal," "normal," "tiny" and "unremarkable" are used.[41]

Also contained in the record is the report from an electroencephalogram (EEG) conducted on Luttrell on June 9, 2010.[42] The report concluded that the EEG was normal and there was no brain activity resembling epilepsy.[43]

Luttrell's treating physician referred her to the University of Arkansas for Medical Sciences (UAMS) Neurology Clinic in July of 2010.[44] The notes from Luttrell's appointment indicate that Luttrell is in no pain, ambulates without difficulty, has a steady gait and adequate joint function.[45] Further, it is noted that Luttrell had only two syncopal episodes in the past two months, and, apart from some sleepiness, is tolerating Dilantin, the medication prescribed by her treating physician to address

---

[40]*Id.* at p. 188.

[41]*Id.*

[42]*Id.* at p. 191.

[43]*Id.*

[44]*Id.* at p. 268.

[45]*Id.* at pp. 257-262.

syncopal episodes.[46] In his impression, the physician states that the nature of Luttrell's syncopal episodes is unclear, and suggests an autonomic/tilt table test be administered to assess for neurocardiogenic syncope.[47] A return appointment was recommended to be scheduled within two months.[48] Luttrell did not return.

In May of 2011, Luttrell sought treatment at a pain center. The May 6, 2011, note from the pain center puts Luttrell's pain level at 4 out of 10 and indicates that this is her usual level of pain.[49] She is prescribed multiple medications to address her pain.[50] Notes from the following appointment indicate that the effectiveness of the drugs has "somewhat improved."[51] One additional medication is prescribed to Luttrell and two of her medications are refilled.[52] As referenced above, during Luttrell's subsequent appointment with her treating physician, the physician noted that Luttrell's pain was "doing well with meds."[53]

---

[46]*Id.*

[47]*Id.* at p. 262.

[48]*Id.*

[49]*Id.* at p. 348.

[50]*Id.* at p. 351.

[51]*Id.* at p. 343.

[52]*Id.* at p. 345.

[53]*Id.* at p. 385.

In her Function Report, Luttrell states that she does laundry and light house work depending on how she feels.[54] She also takes care of pets, prepares her own meals, watches television every day and talks on the phone with her family and friends multiple times a day.[55] She can walk 150 yards before needing to stop and rest, has no problems paying attention, and can follow written and spoken instructions very well.[56] During the hearing Luttrell testified that although she can start laundry and put dishes in the dishwasher, she "never seem[s] to manage to be able to finish anything."[57] However, she also testified that she has no problems sitting, can walk 15 to 20 minutes, and has little problems lifting, carrying, and picking things up.[58] She thinks she can pick up approximately 10 pounds.[59]

A reasonable mind would find the above evidence adequate to support the ALJ's decision to give little weight to the opinion of Luttrell's treating physician that rendered Luttrell unable to perform any work. The medical evidence and testimony

---

[54] *Id.* at p. 143.

[55] *Id.* at pp. 144-45 & 147.

[56] *Id.* at p. 148.

[57] *Id.* at p. 32.

[58] *Id.* at pp. 33 & 37.

[59] *Id.* at p. 33.

of Luttrell regarding daily activities conflict with the treating physician's medical source statements.

**Opinion of the state consultative medical examiner.** Luttrell further asserts that the ALJ erred in dismissing a portion of the state consultative medical examiner's opinion. In light of the medical evidence discussed above, and the assertions made by Luttrell concerning her abilities, substantial evidence supports the ALJ's decision to assign little weight to the opinion.

Following the Mental Diagnostic Evaluation, the state consultative medical examiner concluded that Luttrell "is not likely to be able to cope with the typical mental demands of basic work-like tasks,"[60] and "does not appear to have the capacity to complete work-like tasks within an acceptable timeframe."[61] The ALJ rejected this portion of the state consultative medical examiner's opinion because it is not supported by the evidence. The ALJ points out that the medical evidence of record and Luttrell's own admissions support a finding that she can perform unskilled work. As discussed above, the medical records support the determination that Luttrell can perform sedentary work with the limitations established by the ALJ. Further, Luttrell maintains that she has no problems paying attention and can follow both written and

---

[60]*Id.* at p. 291.

[61]*Id.* at p. 292.

spoken instructions very well.[62] The state consultative medical examiner also found that Luttrell "is able to communicate and interact in a socially adequate manner," "appears to have the capacity to communicate in an intelligible and effective manner," "appears to have the ability to attend and sustain concentration on basic tasks," and "appear[s] to have the capacity to sustain persistence in completing tasks."[63] Additionally, the record establishes that Luttrell never sought treatment from a mental health professional. Substantial evidence supports the ALJ's assignment of little weight to the above quoted portion of the state consultative medical examiner's opinion.

**Substitution of medical opinion.** Finally Luttrell argues that the ALJ erred in substituting his opinion for the opinion of physicians in determining the RFC. "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."[64] The ALJ reviewed all the medical evidence and made his own RFC determination as required. The medical records, Luttrell's own reported activities and abilities, and the opinions

---

[62]*Id.* at p. 148.

[63]*Id.* at pp. 291-92.

[64]20 C.F.R. §§ 416.927(e)(2), 416.946 (2006); *Cox v. Astrue*, 495 F.3d 614, 619 -620 (8th Cir. 2007).

offered by other state agency examiners constitute substantial evidence supporting the ALJ's RFC determination.

**Conclusion.** Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the court DENIES Luttrell's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

It is so ordered this 12th day of September, 2014.

_____
UNITED STATES MAGISTRATE JUDGE